**ORIGINAL**

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

| | | |
|---|---|---|
| DAVITA INC., a Delaware corporation; and TOTAL RENAL CARE, INC., a California corporation authorized to do business in Georgia, | * * * * * * | |
| Plaintiffs, | * * | |
| v. | * * * | CV102-077 |
| NEPHROLOGY ASSOCIATES, P.C., a Georgia professional corporation; NEPHROLOGY CENTERS OF AMERICA, LLC, a Georgia limited liability corporation; DONALD WILLIAMSON, M.D., individually; MARK SMITH, M.D., individually; and CLAY WILSON, M.D., individually, | * * * * * * * * * * * | |
| Defendants. | * | |

*11:40 AM
March 25, 2003
B McCarthy*

**O R D E R**

Defendants move for partial dismissal of Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the following reasons, Defendants' motion (Doc. No. 32) is **GRANTED IN PART** and **DENIED IN PART**.

DHB (36)

CCC:

*43.*

AO 72A
(Rev.8/82)

## I. BACKGROUND

Plaintiff Total Renal Care, Inc. ("TRC") is a wholly owned subsidiary of Plaintiff DaVita, Inc. (Complaint ¶ 6.) TRC operates several outpatient kidney dialysis centers in Georgia, including two in Augusta, and one each in Louisville, Waynesboro, Vidalia, and Statesboro. (Id. ¶ 5.)

Defendants Nephrology Associates and Nephrology Centers of America are owned in part by defendants Donald Williamson, Mark Smith, Alan Lavine, and Clay Wilson. (Id. ¶ 9.) The individual defendants are nephrologists and are licensed to practice medicine in Georgia. (Id. ¶¶ 8,9.)

At TRC's facilities, a nephrologist visits each dialysis patient once a month. (Id. ¶ 12.) The nephrologist gives dialyzing orders and updates the patient's medication. (Id.) More frequently, TRC's "Patient Care" teams administer the dialysis to the patients. (Id.) A Patient Care team is comprised of nurses, patient care technicians, a dietician, and a social worker. (Id.) Each member of a Patient Care team meets with the patient during the patient's weekly dialysis session. (Id.)

TRC's facilities also employ Medical Directors. (Id. ¶ 13.) A facility's Medical Director coordinates and oversees "the medical administration of renal dialysis by the facility's nephrologists." (Id.) Plaintiffs claim their

2

AO 72A
(Rev.8/82)

facilities often contract with a single group of associated nephrologists to provide Medical Director services. (Id. ¶ 14.)  The nephrology group designates the individual Medical Director for a specific TRC facility.  (Id.)  The Medical Directors serve on the facility's medical staff.  (Id. ¶ 15.)

The individual defendants are former Medical Directors at TRC facilities.  (Id. ¶ 16.)  According to Plaintiffs, the individual defendants entered into a written agreement (the "Medical Director Agreement") on or near July 1, 1999 for Nephrology Associates, P.C. ("Nephrology Associates") to provide Medical Directors for TRC facilities.  (Id. ¶ 18.) The Medical Director Agreement contained non-competition clauses, which were in effect only "during the term of the Appointment."  (Id. ¶ 19.)  Plaintiff states that the term of the appointment in the Medical Director Agreement lasted from July 1, 1999 to September 27, 2001.  (Id. ¶ 20.)

Williamson, Smith, LaVine, and Wilson were designated Medical Directors by Nephrology Associates, and they continued in those positions until September 27, 2001, "when their Medical Director Agreement with TRC [was] terminated."  (Id. ¶ 16.)  According to Plaintiffs, however, the individual defendants retained their privileges to treat dialysis patients at TRC's facilities.  (Id. ¶ 17.)  Wilson, Williamson, and Smith all completed  an "Application for

3

Practice Privileges" ("the Application") on or near July 7, 1999 (Id. Ex. B), prior to their signing of the Medical Director Agreement; the Applications also reference TRC's "Rules for Practice Privileges" ("the Rules") (id.).

Following the termination of the Medical Director Agreement, the defendants opened or acquired an interest in various nephrology centers, some of which compete with TRC facilities. (Id. ¶¶ 7, 27-30, 33.) The competition between TRC and the defendants' facilities has spawned many of the claims. Plaintiffs, for instance, enumerate many instances of purportedly unethical solicitations and treatment of patients (see, e.g., id. ¶¶ 35-37) while also asserting that certain of the defendants' nephrology centers were improperly opened near TRC facilities (id. ¶ 33). As a result, Plaintiffs have alleged claims of (1) tortious interference with business relations, (2) injurious falsehood, (3) defamation, (4) deceptive trade practices, (5) breach of a letter agreement, (6) breach of certain noncompetition agreements, and (7) breach of a purchase agreement. (Id. ¶¶ 38-66.)

## II. STANDARD FOR A MOTION TO DISMISS

Defendants move to dismiss portions of Plaintiffs' complaint for failure to state a claim under Rule 12(b)(6).

4

"Before this Court can dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), it must conclude that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief." St. Joseph's Hosp., Inc. v. Hosp. Auth. of Am., 620 F. Supp. 814, 820 (S.D. Ga. 1985), vacated on other grounds, 795 F.2d 948 (11th Cir. 1986).  "In evaluating the sufficiency of a complaint, a court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." Beck v. Deloitte & Touche, 144 F.3d 732, 735 (11th Cir. 1998) (internal quotations marks omitted).   Furthermore, the Court should consider only the facts as alleged in the parties' pleadings; matters outside the pleadings may be considered only if the motion is converted to one for summary judgment.   Fed. R. Civ. P. 12(b)(6),(c).   Motions to dismiss are disfavored and are therefore seldom granted. See Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968)[1] ("Dismissal of a claim on the basis of barebone pleadings is a precarious disposition with a high mortality rate.").

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

AO 72A
(Rev.8/82)

### III. <u>ANALYSIS</u>

Defendants assert that Plaintiffs' claims for injurious falsehood (Count II) and defamation (Count III) should be dismissed *in toto*. Defendants further assert that Plaintiffs' claim under Georgia's version of the Uniform Deceptive Trade Practices Act (Count IV) and their claim of breach of contract (Count VI) should be dismissed in part. (Doc. No. 32.)

### A. Count II: Injurious Falsehood

Although Plaintiffs' complaint alleges a claim of injurious falsehood,[2] Defendants claim that there is no recognizable cause of action for injurious falsehood in the State of Georgia. (Doc. No. 33 at 2.)

In <u>Georgia Society of Plastic Surgeons, Inc. v. Anderson</u>,

---

[2] The elements of an injurious-falsehood claim are set forth in sections 623A and 626 of the Restatement (Second) of Torts. Section 623A provides as follows:

> One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

Restatement (Second) of Torts § 623A (1977). This section applies "to the publiction of matter disparaging the quality of another's land, chattels or <u>intangible things</u>, that the publisher should recognize as likely to result in pecuniary loss to the other through the conduct of a third person in respect to the other's interests in the property." <u>Id.</u> § 626 (emphasis added). The commentary of the Restatement (Second) indicates that the purpose of the "action for injurious falsehood is to protect [the] economic interests of the injured party against pecuniary loss . . . ." <u>Id.</u> § 623A cmt.

6

257 Ga. 710 (1987), the Georgia Supreme Court had the opportunity to address whether a cause of action exists in Georgia for injurious falsehood (also known as trade libel),[3] and it explicitly refused to do so. Anderson, 257 Ga. at 714. Since the Anderson case was decided approximately 15 years ago, no Georgia court has expressly found a cause of action for "injurious falsehood" to exist in Georgia. Furthermore, one district court has determined that the claim could not be brought in federal court without more of an indication that the Georgia courts would recognize it. See Carolina Indus. Prods., Inc. v. Learjet, Inc., 189 F. Supp. 2d 1147, 1167-68 (D. Kan. 2001) (reviewing Georgia law and noting that "Georgia has not recognized the tort of 'injurious falsehood" and that "[w]ithout a stronger indication that Georgia would recognize sections 626 and 623A of the Restatement [setting forth injurious falsehood], . . . the court is unwilling to hold that the plaintiffs have stated a valid cause of action under Georgia law"). I agree. Accordingly, Plaintiffs' claim for injurious falsehood (Count II) is **DISMISSED**.

---

[3] See Bankwest v. Fid. & Deposit Co. of Maryland, 63 F.3d 974, 980 (10th Cir. 1995) ("[T]here are several torts distinct from libel or slander that one might reasonably describe as the publication or utterance of defamatory or disparaging material. One such tort is called by various names such as 'disparagement of property,' 'slander of goods,' 'commercial disparagement,' and 'trade libel.' The tort is now generally referred to as 'injurious falsehood.'") (some internal quotation marks omitted) (citations omitted); Carolina Indus. Prods., Inc. v. Learjet, Inc., 189 F. Supp. 2d 1147, 1167 (D. Kan. 2001) ("Trade libel and product defamation lie within the general rubric of the tort of injurious falsehood, itself born of the cause of action for unlawful interference.") (internal quotation marks omitted) (quoting Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 919 F. Supp. 756, 762 (D.N.J. 1996)).

7

AO 72A
(Rev.8/82)

## B. Count III: Defamation

Defendants claim that (1) Plaintiffs have inadequately plead defamation and that (2) the alleged statements made by Defendants about Plaintiffs are unverifiable opinions and thus not actionable.  (Doc. No. 33 at 3.)

### 1.    Whether Plaintiffs' Complaint Satisfies the Pleading Standard

Under Georgia law, defamation requires proof that a statement was (1) false, (2) malicious, and (3) published. Info. Sys. & Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1228 (11th Cir. 2002) (citing O.C.G.A. § 51-5-1).   In addition, oral defamation may "consist in . . . [m]aking charges against another in reference to [a person's] trade, office, or profession, calculated to injure him therein . . . ."  O.C.G.A. § 51-5-4.

In determining whether a claim is properly plead, federal courts utilize the standard set forth in Rule 8, which states that "[a] pleading . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a).  As one district court in this circuit has explained, while "[s]ome courts have adopted a stringent approach and required defamatory remarks to be stated verbatim in the complaint, . . . in the Eleventh Circuit the test remains whether the allegation gives the

8

AO 72A
(Rev.8/82)

defendant fair notice of the plaintiff's claim and the ground upon which it rests." Banco Surinvest, S.A. v. Suntrust Bank, 78 F. Supp. 2d 1366, 1370 (N.D. Ga. 1999) (internal quotation marks omitted). Further, the Eleventh Circuit has explained that Rule 8(a)(2) does "not require that a plaintiff specifically plead every element of a cause of action." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001); see id. (stating that while a pleader need not "allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory") (internal quotations marks omitted). Thus, the Court of Appeals concluded that "at a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." Id. at 684.

TRC asserts that its complaint gives Defendants fair notice of its claim. (Doc. No. 34 at 5.) Plaintiffs cite to the following paragraphs of the complaint:

1.    "Two or more Individual Defendants, including Smith and Wilson, repeatedly called patients at their homes or otherwise falsely communicated to patients that TRC had barred the Individual Defendants from treating those patients at certain TRC facilities. In truth, the Individual Defendants still maintained

9

AO 72A
(Rev.8/82)

privileges to see patients at the TRC Facilities from which they claimed to be barred . . . ." (Complaint ¶ 36(a) (emphasis added.)

2.  "The Individual Defendants repeatedly called patients at home or otherwise <u>falsely communicated</u> to patients that TRC had revoked their privileges to treat patients at certain TRC Facilities or had otherwise 'fired' them. In truth, the Individual Defendants still maintained privileges to see patients at the TRC Facilities from which they claimed to have been fired . . . ." (<u>Id.</u> ¶ 36(b) (emphasis added).)

3.  "One or more Individual Defendants, including Wilson, made <u>false and defamatory statements</u> about TRC. Specifically, Wilson told Dr. Shay, a doctor who treated patients at several TRC Facilities, that TRC exercised 'undue influence' over approximately 20 patients who recently exercised their right to continue receiving their dialysis treatments at the TRC Waynesboro facility . . . ." (<u>Id.</u> ¶ 36(h) (emphasis added).)

4.  "One or more of the Individual Defendants made <u>disparaging and damaging comments</u> about the services provided at TRC Facilities, which comments are entirely untrue and were made with the <u>intent to convey the impression that the TRC Facilities were inferior</u> to other competing facilities, including the Competing Facilities. For example, Williamson specifically stated to a patient that 'there are no ethics or morals' in the TRC South Augusta Facility, and that 'there is some bad stuff going around here.' One of the Individual Defendants' employees also called a TRC patient at his home and told him that there were some things that he did not know about TRC, and that TRC does not do things like [it] should do." (<u>Id.</u> ¶ 36(k) (emphasis added).)

Based upon these allegations, Plaintiffs have given fair notice to Defendants of their defamation claim. The quoted

10

portions of the complaint assert that the statements were false, and all explain that the statements were published. Further, the element of maliciousness may be fairly gleaned from the complaint. (See, e.g., Complaint ¶ 3.) Thus, Plaintiffs' pleadings are sufficient.

2.    Whether Plaintiffs' Defamation Allegations Are Inactionable as Opinions

Defendants claim that "all of the statements alleged in the complaint are opinions and thus not actionable." (Doc. No. 33 at 4.) Specifically, Defendants assert (Doc. No. 33 at 5) that the following two statements contain unverifiable opinions:

1.    "Wilson told Dr. Shay, a doctor who treated patients at several TRC Facilities, that TRC exercised 'undue influence' over approximately 20 patients who recently exercised their right to continue receiving their dialysis treatments at the TRC Waynesboro facility." (Complaint ¶ 36(h) (emphasis added).)

2.    "Williams specifically stated to a patient that 'there are no ethics or morals' in the TRC South Augusta Facility, and that 'there is some bad stuff going on around here.'" (Id. ¶ 36(k) (emphasis added).)

The Georgia courts have repeatedly held that "[t]here is no wholesale defamation exemption for anything that might be labeled opinion." Eidson v. Berry, 202 Ga. App. 587, 587 (1992) (citing Milkovich v. Lorrain Journal Co., 497 U.S. 1, 2 (1990)) (internal quotation marks omitted). As the Court

11

AO 72A
(Rev.8/82)

explained, opinion statements may imply an assertion of objective fact. Id. Thus, the relevant questions are (1) whether a defendant's statements can reasonably be interpreted as stating or implying defamatory facts about a plaintiff and (2) whether the defamatory assertions are capable of being proved false. Id. at 588. However, "[i]f an opinion is based upon facts already disclosed in the communication, the expression of the opinion implies nothing other than the speaker's subjective interpretation of the facts", and thus those communications are protected. Jaillett v. Ga. Television Co., 238 Ga. App. 885, 890 (1999).[4]

The statements allegedly made by Defendants that Plaintiffs have exercised undue influence over patients and that they have no ethics or morals are both actionable. First, both of these statements imply that Plaintiffs committed undisclosed acts that support the statements. Indeed, to have exercised "undue influence" implies that some action was taken that resulted in influencing someone. In addition, broadly stating that someone or some entity does not have ethics or morals implies the existence of facts that validate the assertion. Summarily stated, both these statement are impliedly based on a set of objective facts,

---

[4] Presumably any facts disclosed with an opinion would have to be truthful for the opinion not to be actionable as defamation. Otherwise, an individual could simply fabricate a set of facts and then subjectively interpret them negatively without fear of liability.

12

see Eidson v. Berry, 202 Ga. App. 587, 587 (1992) (quoting Milkovich v. Lorrain Journal Co., 497 U.S. 1, 110 (1990)); thus, these two allegations are sufficient to state a claim for defamation.

    3.    Whether Defendants' Statements Reference Plaintiffs' Trade or Business

Plaintiffs assert that they are suing pursuant to O.C.G.A. § 51-5-4(a)(3) alleging slander per se. (Doc. No. 34 at 4.) Slander per se is the "[m]aking [of] charges against another in reference to his trade, office, or profession, calculated to injure him therein . . . ." O.C.G.A. § 51-5-4(a)(3) (emphasis added).

Defendants maintain that two of the alleged defamatory statements do not implicate Plaintiffs' trade or profession, and thus are not actionable pursuant to § 51-5-4. (Doc. No. 37 at 4.) In one statement, Defendants allegedly stated that TRC had barred them from treating patients at certain TRC Facilities (Complaint ¶ 36(a)); in the other statement, the Defendants allegedly stated that TRC had revoked their privileges to treat patients at certain TRC facilities or that TRC had otherwise fired them (id. ¶ 36(b)).

It has long been the law that defamatory words about a person's trade or profession alleged to be slanderous per se must reference the plaintiff's trade:

13

> [T]he words must be charged to have been used in reference to one's trade or profession. The speaker must [1] have had the trade or profession of the plaintiff in view, and [2] utter the words in reference to it, as if he should say of a grocery merchant, he keeps false weights, or of a lawyer, that he won't pay his clients the money he collects for them . . . .

Van Epps v. Jones, 50 Ga. 238, 241 (1873); see also Sherwood v. Boshears, 157 Ga. App. 542, 543 (1981); Mell v. Edge, 68 Ga. App. 314, 314 (1942) ("Words to be actionable per se, as tending to injure one in his trade, profession, or business, must contain a charge in reference to such."). To "reference" ones's trade, profession, or business, "'the charge must be something that affects his character generally in his trade.'" Rogers v. Adams, 98 Ga. App. 155, 158 (1958) (quoting Van Epps v. Jones, 50 Ga. 238, 242 (1873)) (emphasis added). Stated differently, "the alleged defamation must actually be made in reference to the plaintiff's profession. Thus, a charge that a physician stole the land of a certain person does not defame the physician with reference to his profession . . . ." Charles R. Adams III, Georgia Law of Torts § 28-1 (2002 ed.).

The two statements that (1) Defendants were barred from practicing at TRC facilities and that (2) Defendants had been fired and had their practice privileges removed do not state a claim under O.C.G.A. § 51-5-4(a)(3). These statements do not reference Plaintiffs' trade or business as would a statement that Plaintiffs generally gave poor health care to

14

their patients or maintained poor medical equipment. Rather, these statements assert that TRC took specific actions against these specific individuals without any generalized reference to Plaintiffs' trade, profession, or business. If these allegations are defamatory, they cannot be so under the "per se" provision of O.C.G.A. § 51-5-4(a)(3).

## C. Count IV: Deceptive Trade Practices

Plaintiffs allege that Defendants engaged in deceptive trade practices proscribed by O.C.G.A. § 10-1-372(a). (Complaint ¶¶ 48, 49.) Plaintiffs, without specifically denominating which subsections of § 10-1-372(a) were violated, allege that Defendants

1.  "caused confusion and/or misunderstanding among the patients and persons in the Augusta, Georgia community as to the source, sponsorship, approval, or certification of the services provided by TRC at the TRC Facilities . . ." (Complaint ¶ 49(a));

2.  "disparaged the services and business of TRC and negatively affected the goodwill of TRC by the above-described false and misleading representations of fact . . . ." (Id. ¶ 49(b)); and

3.  "engaged in conduct that creates, and indeed created, confusion and/or misunderstanding concerning the patients' rights and options as to where they could seek renal dialysis treatment . . . " (Complaint ¶ 49(c)).

The language of the allegations corresponds closely with that of § 10-1-372(a)(2) and (a)(8), which are based on the Uniform

15

Deceptive Trade Practices Act. Defendants assert that (1) the facts presented in the complaint do not state a claim under § 10-1-372(a)(2) and that (2) Plaintiffs have failed to properly plead a claim under § 10-1-372(a)(8). (Doc. No. 33 at 6.)

1. Whether Plaintiffs Have Stated a Claim Under Subsection (a)(2)

Section 10-1-372(a)(2) states the following: "A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he . . . [c]auses likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services . . . ." O.C.G.A. § 10-1-372(a)(2). Applying Georgia law, one district court has explained that

> [t]he comment to the Uniform [Deceptive Trade Practices] Act indicates that the subsection concerning causing the likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services encompasses "confusion as to the <u>commercial</u> source, approval, endorsement, or certification of goods or services <u>caused by trademarks, service marks, certification marks, or collective marks likely to be associated with preexisting trade symbols.</u>"

<u>Carolina Indus. Prods., Inc. v. Learjet, Inc.</u>, 189 F. Supp. 2d 1147, 1165 (D. Kan. 2001) (emphasis added); <u>see</u> <u>also</u> Uniform Deceptive Trade Practices Act § 2, 7A U.L.A. 265 (1964 & 1966) (pinpoint cite omitted). Furthermore, the Georgia Supreme Court has explained the application of O.C.G.A. § 10-1-372(a)(2) as follows:

16

AO 72A
(Rev.8/82)

> Georgia protects trade names by both common law and statute. One of these statutes, UDTPA [Uniform Deceptive Trade Practices Act], entitles a person to the <u>protection of a trade name</u> when <u>another person's use of a similar name</u> "causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services."

<u>Future Prof'ls, Inc. v. Darby</u>, 266 Ga. 690, 691 (1996) (quoting O.C.G.A. § 10-1-372(a)(2) (1989)) (emphasis added); <u>see</u> <u>also</u> <u>Eckles v. Atlanta Tech. Group, Inc.</u>, 267 Ga. 801, 802 (1997) (stating the same as <u>Darby</u>). Thus, it appears § 10-1-372(a)(2) prohibits confusion of trade names. Nothing in the complaint appears to implicate § 10-1-372(a)(2). Thus, any claim brought pursuant to O.C.G.A. § 10-1-372(a)(2) is **DISMISSED**.

    2.   <u>Whether Plaintiffs Have Stated a Claim Under Subsection (a)(8)</u>

Section 10-1-372(a)(8) provides as follows: "A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he . . . [d]isparages the goods, services, or business of another by false or misleading representation of fact . . . ." O.C.G.A. § 10-1-372(a)(8).

Plaintiffs assert that Defendants have violated § 10-1-372(a)(8) because they disparaged the services and business of TRC by making false and misleading misrepresentations of fact. (Complaint ¶ 49(b).) Defendants, however, contend that

17

Plaintiffs have failed to state a claim under subsection (a)(8) for two reasons:

> In order to make out a claim under subsection (a)(8), Plaintiffs must allege that a disparaging statement was made by one of the Defendants. . . . Plaintiffs have [1] failed to allege that one of the Defendants made a statement that was false, malicious and published. . . . [2] Subsection (a)(8) of the Act also requires that a "false or misleading representation of **fact**" be made. . . . [H]owever, any alleged statements made by Defendants were not statements of fact, but, rather, statements of opinion.

(Doc. No. 33 at 6-7 (emphasis in original.)

### a. The Pleading Standard

Plaintiffs have sufficiently plead a claim under O.C.G.A. § 10-1-372(a)(8). Plaintiff's complaint asserts that "[o]ne or more of the Individual Defendants made <u>disparaging and damaging comments about the services</u> provided at TRC Facilities, which comments are <u>entirely untrue</u> and were made with the intent to convey the impression that the <u>TRC Facilities were inferior to other competing facilities</u> . . . ." (Complaint ¶ 36(k) (emphasis added).)

Plaintiffs' allegation is sufficient. First, Plaintiffs state that the disparaging comments were "false and misleading," thereby satisfying the falsity element. (Complaint ¶ 49(b).) Second, the allegation states that Defendants "disparaged the services and business of TRC . . . by . . . [making] false and misleading representations . . .

18

." (Id.) This allegation sufficiently conveys that the statements were published because harm would not occur if there were no audience. Last, the element of maliciousness is ascertainable from the complaint. Plaintiffs allege, for instance, (1) that the statements were untrue and (2) that the intent of the statements was to convey the notion that TRC's facilities were inferior. Further, Plaintiffs' complaint states that "Defendants actually succeeded in coercing a majority of TRC's long-term patients to switch to Defendants' facility by making material misrepresentations and omissions to the patients . . . ." (Complaint ¶ 3 (emphasis added).) These allegations effectively convey the element of maliciousness. In sum, Plaintiffs have properly plead this claim.

### b. Misrepresentations of Fact

Defendants assert that they cannot be liable under O.C.G.A. § 10-1-372(a)(8) because "any alleged statements made by Defendants were not statements of fact, but, rather, statements of opinion." (Doc. No. 33 at 7.) At least one district court in this circuit has held that "statements which are not defamatory because they are mere opinion cannot be the basis of an unfair trade practices claim that Defendant made false and misleading representations of *fact*." Moulton v. VC3, No. 1:00CV434-TWT, 2000 WL 33310901, at *3 (N.D. Ga. Nov.

19

7, 2000).

Plaintiffs assert that "[o]ne or more of the Individual Defendants made disparaging and damaging comments about the services provided at TRC Facilities . . . ." (Complaint ¶ 36(k) (emphasis added).) This Court has stated that before it "can dismiss the complaint [or a claim within the complaint] pursuant to Fed. R. Civ. P. 12(b)(6), it must conclude that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief." St. Joseph's Hosp., Inc. v. Hosp. Auth. of Am., 620 F. Supp. 814, 820 (S.D. Ga. 1985), vacated on other grounds, 795 F.2d 948 (11th Cir. 1986). Certainly it is possible that Plaintiffs may demonstrate that the disparaging comments allegedly made by Defendants were "misrepresentations of fact." At this stage, the Court cannot preclude such a possibility. Plaintiffs will, of course, have to produce evidence that Defendants actually made misrepresentations of fact, but such production is reserved for a later stage of the proceedings. Thus, Plaintiffs have stated a viable claim under O.C.G.A. § 10-1-372(a)(8).[5]

---

[5] Even if the Court concluded that Williamson's comments are not actionable, the claim itself would remain viable at this stage because Plaintiffs have cited Williamson's comment as one example of the comments that Defendants may have made, and the claim itself is sufficiently set forth in the complaint.

20

AO 72A
(Rev.8/82)

## D. Count VI: Breach of Noncompetition Agreements

Count VI sets forth a claim for breach of contract based upon Defendants' alleged violation of certain noncompetition clauses in several "agreements." These agreements include the following: (1) the Medical Director Agreement; (2) the Applications; and (3) the Rules. Plaintiffs allege that these documents constitute "independent, distinct, valid and enforceable contracts between the Individual Defendants, on one hand, and TRC on the other." (Complaint ¶ 55.)

Defendants assert that Plaintiffs did not plead and cannot prove that Defendants received consideration in exchange for their agreement to be bound by the terms of the Applications and the Rules. (Doc. No. 33 at 8.) Defendants further assert that under Georgia law the Applications and Rules "do not constitute valid and enforceable contracts because there was no consideration." (Id.)

### 1. Whether the Pleading is Sufficient

Plaintiffs have sufficiently alleged a breach of contract.[6] The United States District Court for the Eastern District of Pennsylvania has summarized the allegations necessary to properly assert a breach-of-contract claim: "To

---

[6] Plaintiffs have attached the Medical Director Agreement, the Applications, and the Rules to their complaint and, thus, these documents are considered to be a part of the pleading. See Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

21

maintain the cause of action, the complaint must allege (1) the existence of a valid and binding contract, (2) that Plaintiff has complied with the contract and performed her own obligations under it, (3) fulfillment with all conditions precedent, (4) a breach of the contract, and (5) damages to plaintiff." Pierce v. Montgomery County Opportunity Bd., Inc., 884 F. Supp. 965, 970 (E.D. Pa. 1995). Plaintiffs have fulfilled these requirements. Plaintiffs' complaint states the following:

1. "The Medical Director Agreement, Applications for Medical Practice Privileges and Rules for Practice Privileges constitute . . . enforceable contracts . . . ." (Complaint ¶ 55 (emphasis added).)

2. "TRC has performed each and every obligation on its part as required by the Medical Director Agreement, Applications for Medical Practice Privileges and Rules for Practice Privilege Agreements." (Id. ¶ 56 (emphasis added).)

3. "The Individual Defendants' repeated breaches of the . . . agreements resulted in a loss of profits and patients, as well as other damages . . . ." (Id. ¶ 60 (emphasis added).)

Plaintiffs' pleading conforms closely to the requirements set forth in Pierce. Further, to the extent Georgia law requires more specific pleading, it is preempted by the federal standard. See Gates v. L.G. Dewitt, Inc., 528 F.2d 405, 411 (5th Cir. 1976) (stating that plaintiffs' "pleadings [are] controlled by F.R. Civ. P. 8" in federal court).

22

AO 72A
(Rev.8/82)

### 2. Whether the "Agreements" Are Contracts

Defendants contend that the Applications and Rules, which they refer to collectively as "the Bylaws," do not constitute valid and enforceable contracts.  (Doc. No. 33 at 8.)  Relying on Robles v. Humana Hospital Cartersville, 785 F. Supp. 989 (N.D. Ga. 1992), Defendants assert that "Georgia law is clear that hospital bylaws do not create a contract per se between the hospital and the doctors. . . . Absent the existence of a valid contract, Plaintiffs' breach of contract claim must be dismissed."  (Doc. No. 33 at 8.)

If the Court treats the Applications and Rules as a separate agreement from the Medical Director Agreement,[7] it cannot definitively find at this stage that the Applications and Rules are not enforceable contracts.  For instance, the Applications, which reference the Rules, state that Defendants "agree to be bound by the terms [of various documents, including the Rules] if [they are] granted practice

_____

[7] Plaintiffs contend that the Rules and Applications "both are part of the same agreement entered into when Defendants contracted for practice privileges at TRC facilities. . . . Thus, because they form one valid and enforceable agreement all three documents must be construed together." (Doc. No. 34 at 8.)  As Plaintiffs explain, Defendants' attempt to sever the documents "ignores a well-established rule of contract construction that where multiple documents are executed at the same time in the course of a single transaction, they should be construed together." (Id. at 10-11.)  Defendants have noted that Plaintiffs' argument directly contradicts the wording of their complaint, which states that the agreements are independent and distinct contracts.  (Doc. No. 37 at 6 n.2; Complaint ¶ 55.)  The Court need not address the issue of whether Plaintiffs may present an argument that contravenes a statement in the complaint because (1) the parties have not briefed the Court on this issue and (2) the Court is not dismissing any part of Count VI for the reasons set forth in the text.

23

AO 72A
(Rev.8/82)

privileges." (Complaint Ex. B.) Further, Plaintiffs' complaint claims that even after the Medical Director Agreement signed by Defendants expired, Defendants retained their privileges to treat dialysis patients at TRC's facilities; thus, the complaint implies that being a physician with practice privileges is distinct from being a medical director and, presumably, governed by a different agreement.[8]

In addition, it is noteworthy that the district court's order in Robles was issued at the summary judgment stage after the court had obtained evidence on the nature of the documents being contested and the circumstances surrounding their creation. Robles, 785 F. Supp. at 992. Furthermore, the Robles case did not involve multiple documents, one of which referenced another, and, presumably, did not contain exactly the same language as the documents at issue in this case. Finally, Robles is not binding on this Court, and the court in Robles indicated that other courts addressing whether "bylaws" are a contract had reached a different result. Id. at 1001 ("Other courts have held that hospital bylaws are binding enforceable contracts once they are approved and adopted by the hospital's governing board.").

---

[8] It is noteworthy that the Rules provide different definitions for "privileged physicians" and "medical directors". (See Complaint Ex. C (stating that a Medical Director is the "physician designated by the Governing Board as director of end-stage-renal disease services at the Center" while a privileged physician is a physician who is "granted medical practice privileges by the Governing Board to diagnose, treat and attend patients in the Center").)

24

This Court reiterates its prior statement that "it must conclude that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief", St. Joseph's Hosp., Inc. v. Hosp. Auth. of Am., 620 F. Supp. 814, 820 (S.D. Ga. 1985), vacated on other grounds, 795 F.2d 948 (11th Cir. 1986), before it may dismiss it.  At this stage, the Court cannot reach this conclusion regarding any aspect of Count VI.  As a result, the Court declines to dismiss it.

### III. CONCLUSION

For the aforementioned reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss (Doc. No. 32) as set forth within this Order.

**ORDER ENTERED** at Dublin, Georgia, this 25th day of March, 2003.

_____
CHIEF UNITED STATES DISTRICT JUDGE

25

## Confirmation Report — Memory Send

Page      : 001
Date & Time: Mar-26-03  02:02am
Line 1    : +
Machine ID :

| | | |
|---|---|---|
| Job number | : | 063 |
| Date | : | Mar-26 02:00am |
| To | : | ☎17068494401 |
| Number of pages | : | 025 |
| Start time | : | Mar-26 02:00am |
| End time | : | Mar-26 02:02am |
| Pages sent | : | 025 |
| Status | : | OK |

Job number      : 063                    *** SEND SUCCESSFUL ***

---

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION
FILED IN OFFICE
March 25, 2003
B McCarthy

DAVITA INC., a Delaware
corporation; and TOTAL RENAL
CARE, INC., a California
corporation authorized to do
business in Georgia,

          Plaintiffs,

     v.                                        CV102-077

NEPHROLOGY ASSOCIATES, P.C.,
a Georgia professional
corporation; NEPHROLOGY
CENTERS OF AMERICA, LLC,
a Georgia limited liability
corporation; DONALD
WILLIAMSON, M.D.,
individually; MARK SMITH,
M.D., individually; and
CLAY WILSON, M.D.,
individually,

          Defendants.

_____
O R D E R
_____

     Defendants move for partial dismissal of Plaintiffs'
complaint pursuant to Federal Rule of Civil Procedure ("Rule")
12(b)(6).  For the following reasons, Defendants' motion (Doc.
No. 32) is GRANTED IN PART and DENIED IN PART.

DHB (ac)                                              ccc.

AO 72A
(Rev.8/82)

UNITED STATES DISTRICT COURT
Southern District of Georgia


Case Number:     1:02-cv-00077
Date Served:     March 25, 2003
Served By:       Joseph A. Howell

Attorneys Served:

Percy J. Blount, Esq.
Paul E. Chronis, Esq.
Brian A. Sher, Esq.
Thomas W. Tucker, Esq.
Benjamin H. Brewton, Esq.


√   Copy placed in Minutes

√   Copy given to Judge

___   Copy given to Magistrate